314 So.2d 663

**The FRATERNAL ORDER OF POLICE, STRAWBERRY LODGE #40, et al.**

**v.**

**Larry ENTREKIN et al., etc.**

**SC 856.**

Supreme Court of Alabama.

May 22, 1975.

**204**

Charles A. Tarter, Birmingham, for appellants.

James F. Berry, Cullman, for appellees.

EMBRY, Justice.[1]

This is an appeal by plaintiffs from judgment dismissing an action seeking declaratory judgment and injunctive relief.

Plaintiffs describe themselves and defendants, in the complaint, as follows:

"1. THE FRATERNAL ORDER OF POLICE, STRAWBERRY LODGE #40 is a voluntary unincorporated fraternal organization with its principal office located in Cullman, Alabama and is engaged in this judicial circuit in representing police officers who are employed by the defendant City of Cullman,

1. Briefs were carefully considered, as were taped oral arguments. Originally this case was assigned to another Justice, since retired, and reassigned to the author.

Alabama. The plaintiffs Ernie J. Mc-Clendon, William Mangrum and Eugene Ray are police officers employed by the defendant City of Cullman, Alabama and members of the Fraternal Order of Police Strawberry Lodge #40 and they are citizens of Cullman County, Alabama.

"2. The defendants Larry Entrekin, Cecil Rowmine and L. J. Carr are residents of Cullman County, Alabama, members of the City Council of Cullman, Alabama and make up the police committee of said council with Larry Entrekin as chairman. The defendants Thurman Murphy, Herman Pruitt and J. J. Vanderver are residents of Cullman County, Alabama and are the members of the Personnel Board of the City of Cullman, Alabama. The Defendant City of Cullman, Alabama is a municipal corporation located in Cullman County, Alabama."

In an abortive attempt to maintain the action as one for a class, the complaint contains the following allegations:

"3. This suit is brought by individual plaintiffs on their behalf and on behalf of others similarly situated. The class represented by individual plaintiffs consists of police officers employed by the City of Cullman, Alabama who are members of Fraternal Order of Police Strawberry Lodge #40. This class is so numerous that joinder of all members is impractical. There are questions of law and fact common to the class. The representative plaintiffs will fairly and adequately protect the interests of the class."

The complaint failed to allege or suggest that "the claims * * * of the representative parties are typical of the claims * * * of the class" per requirements of ARCP 23(a)(3). We note this in passing and eschew elucidation of Rule 23 for a more fully developed case.

To facilitate understanding of what is to follow, the balance of the complaint is here set out (omitting only signatures and acknowledgments):

"4. On October 1, 1971 an act was passed by the Legislature of Alabama establishing a Civil Service System for the City of Cullman, Alabama. Said act provided among other things the following:

(a) division of positions in the city into classified and exempt services

(b) a personnel board, its organization and duties

(c) personnel rules and regulations

(d) employment of persons with and without competitive examination

(e) temporary appointments and the manner in which they shall be made permanent

(f) permanent promotional appointments

(g) job classification and pay plans

(h) establish lists of persons eligible for appointment and the procedure for their appointment.

In December 1971 the personnel board and the City of Cullman adopted a position classification plan which continues in effect. Further, the personnel Board and the City of Cullman adopted 'Rules of the Personnel Board City of Cullman, Alabama' which embodied the mandates of the 'Act' hereinabove mentioned and adopted a pay plan.

"5. Since the creation of the Civil Service System within City of Cullman, plaintiffs have sought to exercise theri [sic] rights under the law and the rules and regulations promulgated therefrom. The defendants have sought to prevent the plaintiffs from exercising their rights thereon and have ignored the requirements of the law and rules and regulations as follows, to-wit: Defendants have failed and refused to fill the job of Assistant Chief of Police by failing or refusing to give promotional examinations for said position. Defendants have promoted personnel without following procedure required by the law and rules. Defendants have failed or refused to

make promotional appointments of plaintiffs after plaintiffs have met the requirements of the law and the rules because of personal prejudice on the part of defendants. Defendants have sought to avoid the law and the rules by making temporary promotional appointments of unqualified and incompetent personnel; so that defendants will not have to appoint plaintiffs to the position. Defendants have failed or refused to give an examination to temporary appointees in order to avoid appointing plaintiffs to the jobs.

"6. The Plaintfifs are confused and confounded in that they don't know whose orders they are to follow, to-wit: the chief of police or defendant, Larry Entrekin. Entrekin issues orders to the plaintiffs with regard to when they can take coffee breaks, who is to investigate accidents, who to arrest, how to make out accident reports, who is to investigate an accident and interferes with the officers [sic] duties by stopping automobiles and ordering arrests and generally assuming the duties of a police officer. The actions of the defendant, Larry Entrekin, results in the Plaintiffs [sic] inability to function effectively as police officers, causes dissension in the department, affects adversely the morale of plaintiffs, and severely hampers discipline among plaintiffs and brings insubordination and failure to obey orders.

"7. The acts of the defendants as here in above set forth, constitute irreparable injury, continuing in nature, for which plaintiffs have no other adequate remedy and are without justification and interfere with and impair the individual plaintiffs and the class they represent in the exercise of their rights under the civil service act and they are discriminatory and disadvantage plaintiffs from exercising their rights. Further, the acts of the defendants have caused plaintiffs to be unsure as to what their rights, duties and responsibilities are and to whom they are responsible.

"8. As a result of the actions of the defendants, plaintiffs have been subjected to considerable expense, have been denied the enjoyment of valuable rights, have suffered irreparable injury, and have no other adequate remedy.

"WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the Court shall enter its order:

1. Temporarily mandatorily enjoining defendants;

(a) To give the test for assistant Chief of Police, and certify the name or names qualified and appoint an individual to that position.

(b) To set aside any permanent appointments made without having met the requirements of the civil service act and the rules of the personnel board.

(c) To make permanent appointments of those plaintiffs who have met the requirements of the act and the rules after being certified to the appointing authority.

(d) To give the test to those who hold temporary appointments and/or terminate the temporary appointment.

(e) To notify plaintiffs in writing of their scores on the tests and the rank they hold with regard to scores and certification.

2. Declare the rights, duties and responsibilities of plaintiffs with regard to whose orders they are to follow; and what their rights, duties and responsibilities are to defendant, Larry Entrekin, and to their superior officers including the chief of police.

3. Temporarily mandatorily restrain defendant, Larry Entrekin, from:

(a) Issuing orders directly or indirectly to any plaintiff or the chief of police without first having the concurrence of the council by official resolution or ordinance properly entered in the minutes of the council meeting.

4. Declare the rights, duties, responsibilities and scope of authority of the defendant, Larry Entrekin, and the other defendants to the plaintiffs, the police chief, and the police department.

5. That such injunction be made permanent upon final hearing.

6. For such other relief as may be just and proper, premises considered."

A motion to dismiss was filed on behalf of Thurman Murphy, Herman Pruitt and J. J. Vanderver, individually and as members of the Personnel Board of the City of Cullman, Alabama; the City of Cullman, Alabama, a municipal corporation; Larry Entrekin, Cecil Rowmine and L. J. Carr, individually and as City Councilmen of the City of Cullman, Alabama.

Among other grounds, the Murphy-Pruitt-Vanderver motion contained the following:

"1. To dismiss the action against THURMAN MURPHY, HERMAN PRUITT and J. J. VANDERVER, individually and as members of the Personnel Board of the City of Cullman, Alabama because the Complaint fails to state a cause of action against these individuals, individually, or as members of the Personnel Board of the City of Cullman, Alabama, upon which relief can be granted.

"2. To dismiss the action because no justiceable [sic] controversy is alleged in the Complaint between the Plaintiffs and these Defendants.

* * * * * *

"4. To dismiss the action because the Plaintiffs have not expended their administrative remedies against these Defendants."

The City of Cullman motion:

"2. To dismiss this action because no justiceable [sic] controversy exists between the Plaintiffs and this Defendant.

"3. To dismiss the action because the Complaint fails to state a cause of action upon which relief can be granted.

"4. To dismiss the action because the Plaintiffs have not expended their administrative remedies against theis [sic] Defendant."

The Entrekin-Rowmine-Carr motion:

"1. To dismiss the action because the Complaint fails to state a cause of action upon which relief can be granted against these Defendants.

"2. To dismiss the action because no justiceable [sic] controversy is alleged in the Complaint between the Plaintiffs and these Defendants.

"3. To dismiss the action because the Plaintiffs have not expended their administrative remedies against the Defendants."

After the motion to dismiss was filed the following order was entered by the trial court:

"This cause having been presented to the Court on Motion to Dismiss by the defendants, and matters outside the pleading having been presented by the Court not excluded, the motion is considered as one for summary judgment.

IT IS ORDERED AND ADJUDGED THAT:

1. Defendants' motions to dismiss with matters presented outside the pleadings will be treated as motion for summary judgment.

2. Plaintiff has ten (10) days to respond to the motion for summary judgment should they be so advised.

3. Motion for summary judgment will be set for hearing before the Court at 9:00 o'clock A.M. on March 28, 1974.

DONE this 14th day of March, 1974.

* * * * * *

FILED IN OFFICE
MARCH 14, 1974
RUTH GASSER
CIRCUIT CLERK"

Then another order was entered, reciting:

"This case came on for argument before the court on the defendants [sic] motions to dismiss, and by the Courts [sic] order of March 14, 1974, with exhibits being attached to the motions to dismiss the Court shows [sic] [chose] also to consider the matter on motion for summary judgment.

The plaintiffs having ten (10) days to respond to the motion for summary judgment chose to file nothing but; during final argument counsel for the plaintiffs requested rights to file briefs on or before April 16, 1974, and the defendants [sic] attorneys agreed thereto.

IT IS ORDERED AND ADJUDGED THAT:

1. The case is set over for consideration by the Court on the motion to dismiss or motion for summary judgment filed by the defendants after briefs have been filed with the Court.

2. Counsel for the parties may file briefs with the Court on or before April 16, 1974.

\* \* \* \* \* \*

FILED IN OFFICE
MARCH 28, 1974
RUTH GASSER
CIRCUIT CLERK"

On 24 April 1974, judgment was entered dismissing the action. It contained findings:

"The court further finds the plaintiffs, nor either of them, has exhausted his administrative remedy under the Civil Service System for the city of Cullman. This court has no way under the state of the pleadings of this case to review factually any determinations made by the Civil Service System of the City of Cullman pretaining [sic] to any matter alleged in the pleadings.

"It would further appear that this court is requested to investigate a police department, the city government of Cull-man, and the elected police commissioner, who is charged with the responsibility of maintaining an adequate police department, along with the Civil Service System and each of its' [sic] officers and formulate some policy and rule for all of the departments, and elected officers to live by, relating to the total function of the police department.

"It would appear to the court, should this action be maintained, Circuit Courts in this state will forever be directing governmental units and boards, existing now in large numbers, in their every function, which appears to be outside the scope of the Judiciary.

"It appears to the court the plaintiffs, and each of them, is afforded a vehicle to reach this court by Section 19 of Exhibit A [the Act], being the law establishing the Civil Service System for the City of Cullman, where a record would come up, or where inaction is alleged, an extraordinary writ could be utilized.

"The court feels this action should be disposed of at this point but does not believe a summary judgment should be granted in that plaintiffs, one or more of them, could be jeopardized in their legal interest under res judicata.

"IT IS THEREFORE, ORDERED AND ADJUDGED, the case is dismissed out of court, cost to the plaintiffs.

"DONE, this 24th day of April 1974."

In this posture the question before the court is the propriety of dismissal of this action under ARCP 12(b)(6) upon failure of plaintiffs to amend complaint or respond to the motion for summary judgment (by affidavit or otherwise). To make this determination we must consider the intent of developed principles of administrative law together with the proper operation of "notice" pleading under ARCP 8, 12 and 78.

I

"\* \* \* [T]he judicial function is traditionally to weigh the merits of par-

ticular controversies, but not to engage in a consistent determination of policy or to maintain steady contact with a general and continuing problem." Gellhorn & Byse, Administrative Law, Ch. 1, Sec. 1, Sixth Ed. (1974)

The response to public necessity for continuing supervision of certain aspects of our governmental system has been the creation of administrative agencies. The creation and growth of these regulatory agencies is no mere accident. Their existence is in response to a perceived need.

" * * * As any community passes from simple to complex conditions the only way in which government can deal with the increased burdens thrown upon it is by the delegation of power to be exercised in detail by subordinate agents, subject to the control of general directions prescribed by superior authority. * * * A system of administrative law must be developed, and that with us is still in its infancy, crude and imperfect." ADDRESS OF THE PRESIDENT, Elihu Root, PUBLIC SERVICE BY THE BAR, Reports of the 39th Annual Meeting of the American Bar Association, Vol. XLI, pp. 368, 369, (1916).

Mr. Root was speaking, of course, about the newly developing federal administrative system. His comments are equally applicable to the counties and cities of Alabama which will need, as they continue to grow and prosper, new governmental machinery to cope with the complexities of government at every level, generated by expansion. In this case, legislative reply was to establish a civil service system for the City of Cullman, Alabama. Perusal of the title of Act 2123 (Vol. IV, 1971 Acts of Alabama, p. 3404, attached as appendix to this opinion) indicates the underlying purposes of the Act:

" * * * to provide a *policy* for the administration of this act * * * to provide personnel rules and personnel plans of the city * * * to *provide* for the organization of the Personnel Board

of the city, to *establish* the qualifications of its members and the *duties* they will perform; to *provide* for the adoption, amendment and repeal of rules, regulations * * *" (emphasis added).

Within the Act itself we find:

"The personnel program established by this Act *shall be administered* by the board * * *" Act 2123, Section 4 (emphasis added).

"In addition to the duties set forth elsewhere in this Act, the board shall (a) advise the governing body on matters of personnel administration * * * (b) represent the public interest in the improvement of personnel administration in the city service; (c) make any inquiry which it may consider desirable concerning personnel administration in the city service * * *" Act 2123, Section 5.

"So long as the same are not inconsistent with this Act, the board shall have the power to recommend to the governing body the adoption of rules and regulations for the operation of the civil service system * * *" Act 2123, Section 6.

We mention these particular sections of the Act to emphasize that its very enactment makes clear the legislature intended to establish a civil service system administered by the personnel board. The plaintiffs acknowledge this in their complaint set out supra. Act 2123 is the legislative response to the perceived need of the City of Cullman to adequately deal with the increasingly complex problems of personnel administration.

Unlike the federal system, in Alabama there is a paucity of law, statutory or case, concerning the proper role of the judiciary as it relates to the function of administrative agencies such as the one with which we are presently concerned. We have adopted the doctrine of exhaustion of administrative remedies. It requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those reme-

dies have been explored and, in most instances, exhausted. *Simpson* v. *Van Ryzin*, 289 Ala. 22, 265 So.2d 569; *Ex parte State ex rel. Lyerly*, 38 Ala.App. 630, 91 So.2d 233.

In this case, no doubt, the doctrine could be strained to provide a methodology of appellate determination. However, the time has come to recognize the necessary pervasiveness of administrative function and we should proceed to develop our law to conform to the needs of established agencies.

This requires first to consider the doctrine of primary jurisdiction or prior resort.

> "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *'Exhaustion'* applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. *'Primary jurisdiction,'* on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. * * *" *United States* v. *Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (emphasis added).

■ The claim for relief presented in plaintiffs' complaint is within the jurisdiction of the circuit court. *City of Tuscaloosa* v. *Marcum*, 283 Ala. 440, 218 So.2d 254. Our inquiry into this matter is to first establish whether the circuit court properly dismissed the complaint at the time it did so. Was the doctrine of primary jurisdiction properly applied in the particular circumstances of this case considering plaintiffs' failure to amend or respond to the motion for summary judgment by evidentiary supplementation of their complaint? They were afforded ample opportunity to do that. The trial judge referred to the exhaustion doctrine. His use of that terminology causes no concern. That which is important to a decision whether invocation of the doctrine of primary jurisdiction or prior resort was correct is: do policies underlying the doctrine apply in a particular case?

■ One of the aims of the doctrine is to insure uniformity and consistency in dealing with matters entrusted to an administrative body. *Texas & Pacific Railroad Co.* v. *Abiline Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. Another factor which must be considered is whether referral to an agency is preferable because of its specialized knowledge or expertise in dealing with the matter in controversy. *Far East Conference* v. *United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. See also *United States* v. *Western Pacific Railroad Co.*, supra; *United States Navigation Co.* v. *Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408. Still another is whether initial review of the controversy by the administrative body will either assist a court in its adjudicatory function or perhaps alleviate entirely the need for resort to judicial relief. *Chicago Mercantile Exchange* v. *Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344; *Ricci* v. *Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525, reh. denied, 410 U.S. 960, 93 S.Ct. 1411, 35 L.Ed.2d 697. This latter factor indicates it is preferable to obtain the views of the administrative body concerning the statutes or rules with which it must work and how those statutes or rules should be applied to the controversy at hand. See Miron, Primary Jurisdiction, 43 Antitrust L.J., A.B.A., Issue No. 2, p. 329.

We hold today that when a court and an administrative agency have concurrent jurisdiction over a controversy, the court may decline judicial relief pending administrative review when the court finds that administrative review of the controversy will promote uniformity and consistency in the application of the pertinent statutes, rules and regulations; agency expertise is required, and initial agency review will materially assist the court upon later review. In stating this rule we use a conjunctive form of expression. This should not be taken as demanding that all of the determinative factors be present simultaneously. Where one or more of the factors are present it is for the court to weigh the need of initial agency review against the right and need of the parties to immediate judicial determination. In ruling on such questions, a trial court should make known those factors considered in deciding whether to decline immediate judicial relief or not.

## II

Before proceeding to consider the propriety of dismissal of the action entered upon plaintiffs' failure to amend their complaint or respond to the Rule 56 motion within ten days as allowed by the trial court in its order of March 14, 1974, together with the failure of plaintiffs to amend their complaint within ten days of the final judgment of dismissal as allowed by ARCP 78, we must consider the interrelation of the primary jurisdiction doctrine. with ARCP 8 and 12.

ARCP 8(a)(1) requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this rule the prime purpose of pleadings is to give notice. ARCP 8(a)(1) interacts with ARCP 12(b)(6) which permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Stated in other terms, " * * * a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Conley* v. *Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and this is the rule we have adopted in our recent cases. *Bowling* v. *Pow,* 293 Ala. 178, 301 So.2d 55; *Smith* v. *Potts,* 293 Ala. 419, 304 So.2d 578; *Watwood* v. *R. R. Dawson Bridge Co.,* 293 Ala. 578, 307 So.2d 692. Implicit in *Conley* and our cases is the requirement that the provable set of facts entitling plaintiff to relief must be according to *a cognizable theory of law.*

But what kind of pleading satisfies this rule? At least it should contain a *broad general* statement of the case and has been clarified in the following terms:

"* * * the complaint * * * need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. * * *" 5 Wright & Miller, § 1216. See also 2A Moore's Federal Practice, ¶ 8.13.

We agree that

"* * * Litigation is not an art in writing nice pleadings. It can and should seldom be settled on its merits at the pleading stage unless the parties are agreed upon the facts and want a quick legal answer. * * *

"The pleading rules are designed to eliminate delay, and reduce the pleading requirements to a minimum. They are implemented by and depend upon pre-trial procedure for the formulation of issues, and pre-trial examination and summary judgment to disclose, in many cases, the true nature of the action,

narrow the trial to the real controverted issues, and permit either a plaintiff or a defendant to have judgment, in a relatively short time, where there is no bona fide claim or defense. * * * The real importance of Chapter III of the Rules, which deals with pleadings, is that it makes pleadings, in and of themselves, relatively unimportant. Cases are to be decided on the merits." 2A Moore's Federal Practice ¶ 8.02.

In short, it is the function of pleadings under the rules to allow plaintiffs and defendants to open the door to developing their cases on the merits. But in so doing, a plaintiff must be careful not to allow that open door to slam shut.

"The pleader must be careful not to allege facts that constitute a defense to his claim for relief, or, for that matter, a defense to his defense. For example, a complaint in an action seeking specific performance for the sale of land that alleges an oral agreement defeats itself by showing a prima facie defense of the statute of frauds. This so-called 'built-in defense' may be either partial or absolute. If partial, it can be avoided by a showing that certain facts or circumstances vitiating the defense exist. Thus, a statute of frauds defense can be avoided if the complaint indicates that there has been part performance of the oral contract * * *" 5 Wright & Miller, § 1226.

### III

With this as background we proceed to discuss particulars of the present case. In doing so we must carefully examine the complaint.

In paragraph four of the complaint plaintiffs allege that the City of Cullman and the personnel board adopted "Rules of the Personnel Board." The record, however, does not show these rules.

In paragraph five of the complaint plaintiffs allege they have sought to exercise rights under these rules and defendants prevented them from doing so. Specifically plaintiffs allege defendants failed to fill the job of Assistant Chief of Police by refusing to give a promotional examination for that position, failed to promote qualified personnel, filled positions with unqualified personnel, and failed to give examinations as required.

In the absence of the "Rules of the Personnel Board" any statement we could make about allegations of plaintiffs would be stated in a vacuum were it not for Act 2123, Section 6, which requires rules and regulations recommended by the personnel board and adopted by the governing body to be consistent with the Act. We, therefore, look to the Act to determine whether these allegations were sufficient to withstand the motion to dismiss. Construing the allegations most favorably to plaintiffs, such assert that defendants failed to perform certain administrative functions which Act 2123 requires of them. The question for us then becomes clear. In light of our announced doctrine of primary jurisdiction and its interrelationship with ARCP 8(a), 12(b)(6) and 78, are these allegations sufficient to withstand the motion to dismiss when considered with the particular facts of the case?

The doctrine of primary jurisdiction implies that matters entrusted by the legislature to an administrative agency, ought first be considered by that agency. Thus when a controversy arises as to how an agency is conducting its affairs, a demand for corrective action first should be made to that agency—prior resort. There is no allegation in plaintiffs' complaint that a demand for corrective action was made to the personnel board or to the governing body. In a typical lawsuit failure to so allege generally would not suffice to sustain a motion to dismiss. As already stated the purpose of pleadings is to provide defendants and plaintiffs with sufficient information upon which to begin honing with

precision the issues and merits of a particular case. This process normally occurs following the pleading stage through pretrial and discovery procedures. In this case the situation is reversed because of the existence of an administrative agency established by the legislature. That fact appears on the face of the complaint. The doctrine of primary jurisdiction provides when certain factors are present, as mentioned supra, then the honing of facts and issues first should be accomplished by the appropriate administrative body. Thus in the case where, as here, the doctrine applies, the function of pleadings is to do more than in the ordinary lawsuit. The pleadings must be more precise because the facts and issues should have been developed prior to and not after the pleading stage.

■ The failure to allege resort to, and demand for action from, the administrative agency involved creates a "built-in defense". This defense is not absolute, however, since the very character of the doctrine of primary jurisdiction or prior resort demands judicial determination whether factors are present that will delay the court adjudicating a particular controversy. Thus an order of dismissal normally would not be proper since it could develop upon hearing that resort to prior agency determination would not be required since those factors dictating such a resort were absent.

■ In plaintiffs' brief it is argued that resort should not be required because it would be futile since the agency from which they would have to seek corrective action is the one about whose actions they complain. Were this a case involving simply the doctrine of exhaustion of administrative remedies, that contention might have merit in certain instances. Futility of prior resort is not apt in this case under the doctrine of primary jurisdiction. Plaintiffs cite us to *Calagaz* v. *Calhoon*, 309 F.2d 248 (5th Cir. 1962), for the proposition that

" * * * action to obtain relief through union procedures would be 'futile', because the individuals who were named as defendants and whose actions the plaintiff complains of, are officers of National and are in control of all channels of relief the plaintiff might have in the union. * * * "

*Calagaz* was a dispute between members of a local union and those of the national union with which the local union had been affiliated through a District of the national union. In a very detailed complaint facts were alleged which supported the conclusional allegation of "futility." *Calagaz* is distinguishable for other reasons. In the context of the case before us it is well to point out two of these reasons.

(1) Labor unions are not creatures of legislative bodies but rather voluntary associations.

(2) In *Calagaz* the *facts* alleged showed *prior decisions* of the national union, the operative effect of which, had previously dismantled and dissolved the local union thus demonstrating "futility."

Since labor unions are not created by legislation and there is no legislative mandate to an administrative agency there is less reason to invoke the doctrine of primary jurisdiction. It should be kept in mind that the doctrine exists to seek proper accommodation between the courts and the legislatively created agencies entrusted with the administration of certain programs, in this case, that of a civil service system for the City of Cullman. *Calagez* is more akin to litigation betwen private citizens, not subject to legislatively mandated administrative programs, hence the greater need for immediate judicial relief.

■ In the present case the record before us discloses no policy decisions or other information about how the personnel board intends to function under Act 2123

or what rules the personnel board has promulgated. Futility of resort is important only insofar as it bears on the factors which the court must find present prior to invoking the doctrine of primary jurisdiction.

 More to the point, dismissal *in this case* was correct for a more basic reason; plaintiffs were afforded at least two opportunities to persuade the trial court to entertain the action. They failed to take advantage of either of those opportunities. In its order of March 14, 1974 the trial court initially decided to treat the motion to dismiss as one for summary judgment and afforded plaintiffs ten days to respond to that motion. In its order of March 28, 1974, the trial court noted that the plaintiffs did not choose to respond to the motion. The action was then set over for consideration and the parties allowed in excess of two weeks to file briefs. On April 24, 1974 the court entered judgment dismissing the action and made findings. Unlike the federal rules, ARCP 78 gives an automatic right to amend within ten days when a motion to dismiss is granted. Plaintiffs also failed to exercise that right; instead, they perfected this appeal. Under this state of the record the dismissal was correct. The findings in the order of April 24, 1974 are sufficient determination of those factors permitting invocation of the doctrine of primary jurisdiction or prior resort. In those findings the trial court recognized a need for the agency involved to make certain factual determinations. The court also perceived a need for initial agency determination as to the policies and procedures under which that agency would choose to operate. The findings of the trial court are at least minimally sufficient to support a decision upon the basis of which the doctrine of primary jurisdiction could be invoked. This, coupled with plaintiffs' failure to avail themselves of at least two opportunities to persuade the court to entertain the action, is adequate to support the dismissal.

 Our holding today that the dismissal was correct does not mean we approve of this procedure as that best to follow. The doctrine we adopt today better lends itself to either summary judgment or partial summary judgment. ARCP 56. By utilizing Rule 56 procedure the trial court can more adequately adjudicate whether there first should be resort to administrative determination. The latter procedure would be limited to the question of whether there should be initial resort to agency review or demand of specific action from it and would not extend to the merits of a particular controversy. A trial court may well choose to stay proceedings before it and retain jurisdiction pending agency review. This methodology would be especially appropriate where rights of parties may be affected by a statute of limitations or some other bar. See e. g. *Far East,* supra, and *Carnation Co.* v. *Pacific Westbound Conference,* 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709.

There was no reversible error in granting the motion to dismiss.

Affirmed.[2]

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.

See Appendix on next page

---

2. The enactment of an Administrative Procedures Act by the legislature would go far toward solution of many of the problems presented by cases such as this. See 25 Alabama Lawyer 375 (1965). There exists a revised model state act proposed by the ABA and National Conference of Commissioners on Uniform State Laws. Some forty-one states have adopted some form of Administrative Procedures Act, borrowing heavily from the model uniform act.

## APPENDIX

Act No. 2123 H. 2467—Drake

### AN ACT

To establish a Civil Service System for the City of Cullman; to provide a policy for the administration of this act; to divide positions in the city into classified and exempt services, and to provide for changes between such services; to provide a status for present employees; to provide personnel rules and personnel plans of the city; to provide for the organization of the Personnel Board of the city, to establish the qualifications of its members and the duties they will perform; to provide for the adoption, amendment and repeal of rules, regulations, determinations, job classification plans, pay plans, and mandatory and/or permissive retirement plans to effectuate the purpose of this act; to provide for the employment of persons with and without competitive examination; to provide for temporary appointments and the manner in which and the extent to which they shall be made permanent; to provide for the establishment of lists of persons eligible for employment and to establish the manner in which such lists shall be used; to establish a period of probation for certain city employees; to provide for rules governing working hours and leaves of absence; to provide for the laying off of employees; to establish the manner in which employees may be disciplined and to provide a procedure under which certain employees may protest such disciplinary action; to give the Personnel Board the authority to require the attendance of witnesses and the production of documents at such proceedings and to establish penalties for failure to attend or produce records as required; to provide for an appeal from decisions of such board in such protests; to require such Board to maintain certain records; to prohibit and fix the punishment for certain political activity by certain employees of the city; to provide for the expenses of such Board; to guarantee certain rights to the governing body of the city.

*Be It Enacted by the Legislature of Alabama:*

**Section 1. Definitions.** The following words, terms, and phrases, wherever used herein, shall have the meanings respectively ascribed to them in this section, and shall include the singular as well as the plural:

**Allocation** means the assignment of positions to a class on the basis of the nature, difficulty and responsibility of work of the positions.

**Appointing authority** means the official board designated by resolution of the governing body as being the official or board having authority to fill vacancies in a specified class, or the governing body itself in the event that the governing body has made no such designation in respect to a class, or having made such designation, has thereafter repealed such resolution.

**Board** means the Personnel Board of the City of Cullman.

**Certify, Certification** means the act of supplying the appointing authority with names of applicants deemed eligible for appointment to the class or position to be filled.

**City** means the City of Cullman.

**Class** means a position or group of positions that involve similar duties and responsibilities and require similar qualifications and are designated by a single title indicative of the work to be performed.

**Court** means the Circuit Court of Cullman County, Alabama.

**Eligible list** means a list of names of persons who have successfully competed by examination written or oral, arranged in the order of their final ratings, as determined by the Personnel Board.

**Employee** means a person regularly occupying a position in the classified service or a person who is on authorized leave of absence and whose position is being held for him pending his return.

**Demotion** means removal of an employee from a position in one class to a position in another class having a lower maximum salary limit than the position from which he was removed.

**Governing body** means the Mayor and City Council of the city or any governing authority which is a successor thereto.

**Merit system** whenever the term "Merit System" appears, it shall mean the same as "Civil Service System"; within the meaning of this act.

**Original appointment** means the appointment to a position in the classified service of a person who is not being reemployed from the reemployment list, nor being promoted from the promotional eligible list and who, except for those in the exempt service and those serving under temporary appointment, is not an employee of the city.

**Original appointment eligible list** means the eligible list of persons qualified for original appointment to a position.

**Laid-off** means separated from the classified service of the city because of lack of work or funds or other reason not related to fault, delinquency or misconduct on the part of the employee.

**Position** means a group of current duties and responsibilities assigned or delegated by competent authority and requiring the full or part time services of one employee.

**Promotion** means a change of employment from a position of one class to a position of another class which has a higher maximum salary rate.

**Promotional eligible list** means the eligible list of persons qualified for promotion to a position.

**Reemployment list** means:

(a) the list of names of former employees who have been laid-off from a position within the past two (2) years who had permanent status in that position so long as that position continued in the classified service, arranged in the inverse order in which they were laid-off.

(b) the list of names of those former employees who resigned or otherwise left the city service in good standing at any time within the past two (2) years.

**Vacancy** means a position duly created with funds provided for payment of a salary, which is not occupied, or which is occupied by a person serving under a temporary appointment.

### Section 2. Division Into Exempt and Classified Services.

All offices and positions of the city shall be divided into the exempt service and the classified service.

1. The exempt service shall include:

(a) the positions of all elected officials of the city, (b) the positions of voluntary personnel and personnel appointed to serve without pay; (c) the positions of consultants rendering temporary professional service; (d) all positions involving seasonal or part-time employment; (e) such positions as the board shall determine to involve unskilled or semi-skilled work; (f) positions of departmental supervisors; (g) the positions of attorneys rendering legal service; provided, however, such positions in the exempt service held by employees of boards and commissions may be placed in the classified service by resolution of the governing body, after favorable recommendation by such other board or commission, and the governing body in such resolution shall prescribe the conditions under which the employees holding such positions so transferred may acquire permanent status in such positions so long as such positions remain in the classified service.

2. Classified Service:

The classified service shall include all positions in the city service that are paid out of the general, fund of the city and out of funds of boards and commissions whose employees are placed in the classified service, and which are not specifically placed in the exempt service; provided, however, the governing body may by resolution, pursuant to a recommendation by the boards, remove any position from the classified service and place it in the exempt service. Unless otherwise specifically provided or clearly implied, the provisions of this act shall apply only to the classified service.

### Section 3. Status of Present Employees.

All employees who have acquired permanent status shall, subject to the provisions of this Act, have permanent status in their present positions so long as such positions remain in the classified service. All other employees shall be eligible to acquire permanent status in their present positions so long as such positions remain in the classified service in the manner provided in Section 14, upon completing six months' service in such positions, such time to be computed from the beginning of such service, rather than from the effective date of this Act.

### Section 4. Organization of Board.

The personnel program established by this Act shall be administered by the board. The board shall consist of three (3) members who are residents of the city and who shall be appointed by the governing body. No member of the board shall be employed by or be an official of the city, nor hold any elective public office. The composition of the board shall be designated as Place No. 1, Place No. 2, and Place No. 3. The person appointed as a member of the board in Place No. 1 shall serve a term of two (2) years; the person so appointed for Place No. 2

shall serve a term of four (4) years; the person so appointed for Place No. 3 shall serve a term of six (6) years. Thereafter each term shall be for a period of six (6) years. Vacancies occurring during a term shall be filled for the balance of the term by the governing body. Members of the board shall serve without compensation, but funds shall be provided from the general fund of the city for their reasonable and necessary expenses. The board shall elect from its own members a chairman, a vice chairman and a secretary-treasurer. The board shall meet as often as necessary to carry out the purpose of this Act, but shall meet at least once each quarter, however, the governing body shall have the right to control the appropriations to the board and to regulate the expenses of the board as it deems necessary. A majority of the members of the board shall be necessary to constitute a quorum for the transaction of business and no action shall be taken without the affirmative vote of a majority of the quorum present at a meeting. The board, with the approval of the governing body shall have the right to engage such full or part-time personnel as shall be necessary to carry out the provisions of this Act.

**Section 5. General Duties of Board.** In addition to the duties set forth elsewhere in this Act, the board shall (a) advise the governing body on matters of personnel administration, including the development of personnel rules, a job classification plan, and a systematic pay plan (b) represent the public interest in the improvement of personnel administration in the city service; (c) make any inquiry which it may consider desirable concerning personnel administration in the city service; and (d) make recommendations to the governing body with respect to any of the foregoing duties.

**Section 6. Rules, Classification Plans, and Pay Plans.** So long as the same are not inconsistent with this Act, the board shall have the power to recommend to the governing body the adoption of rules and regulations for the operation of the civil service system established hereby, including, but not limited to a job classification plan, a pay plan, and a plan for the mandatory and/or permissive retirement of employees. Within sixty (60) days after the presentation of a recommendation of the board, the governing body shall act upon the same, and if the governing body by resolution adopts the recommendation of the board, the same shall become operative and have the force and effect of law. All rules, regulations and pay and classification plans in effect at the time of the adoption of this Act which are not in conflict with the provisions hereof shall remain in force and effect after the effective date of this Act until the same are altered, amended or repealed in the manner hereinafter provided.

**Section 7. Amendments and Repeal.** Any rule, determination, regulation or plan may be amended or repealed in whole or in part in the same manner as is provided herein for the making of such rules, determinations, regulations or plans.

**Section 8. Job Classification Plan.** After the adoption by the governing body of a job classification plan, allocation of each position in the classified service shall be made by the board with the approval of the governing body to the end that all positions in the same class shall be sufficiently alike to permit use of a single descriptive title, the same qualification requirements, the same test of competence, and the same pay scale.

**Section 9. Pay Plan.** After the adoption by the governing body of a pay plan and any rules of its administration, the board, with the approval of the governing body, will assign each position to one of the pay ranges provided in the pay plan to the end that the rate or range of compensation for each class provided for in the pay plan shall be such as to reflect fairly the differences in duties and responsibilities in the various classes.

**Section 10. Examinations.** Eligibility for original appointment or promotion to vacancies in positions in the classified service occurring after the adoption of this Act shall be determined by the Personnel Board. The Personnel Board shall conduct such examinations as will fairly test the abilities and aptitudes of the applicants with respect to the duties to be performed. Applicants who pass the test and otherwise qualify for original appointment or promotion, as the case may be, shall be placed on the appropriate eligible list for the vacancy. The board may refuse to examine, or after examination refuse to certify the name of anyone who is found to lack any of the established qualification requirements for the position for which he applies or who is physically so disabled as to be unfit to perform duties of the position to which he seeks appointment, or who has been convicted of or is under indictment for any crime involving moral turpitude or who has been guilty of any infamous or disgraceful conduct or who has been dismissed from the public service for delinquency or misconduct or who has intentionally made a false statement of any material fact or practiced or attempted to practice any deception or fraud in his application, or in his examination.

**Section 11. Temporary Appointment.** Pending the availability of a list of names certified as provided in Section 13 hereof, positions may be filled by temporary appointment. The governing body by resolution adopted pursuant to a recommendation of the board may grant permanent status in a position in the classified service so long as such position remains in the classified service, to any employee who has served in a vacancy in a position then in the classified service by temporary appointment for at least twelve (12) months and who has passed his examination, if at the time of such action by the governing body no such list of names has been so certified for the vacancy in which the said employee is serving.

**Section 12. Lists of Names of Persons Available for Appointment.** Lists of names of persons available for appointment to a vacancy in a position in the classified service will be selected for certifica-

tion as provided in Section 13 hereof in the order in which they appear from among the laid-off persons on the reemployment list, promotional eligible list, original appointment eligible list, and reemployment list composed of former employees for said vacancy, which lists shall have priority one over the other in the order named. A former employee with probationary status with respect to the vacancy may, with the approval of the appointing authority, have his name placed at such position on the promotional eligible list as the appointing authority may designate. Policies and procedures for administering eligible lists and covering the duration, cancellation, replacement, and consolidation of such lists, and the removal or suspension of names therefrom shall be provided in the personnel rules.

**Section 13. Method of Filling Vacancies.** Except as hereinafter provided, vacancies in positions in the classified service shall be filled by the appointing authority by the appointment of a person whose name is certified, within thirty (30) days after certification. Certification shall be made upon request of the appointing authority therefor whenever a vacancy exists, the appointing authority, in his discretion, determines that such vacancy shall be filled, and the name of an applicant for such vacancy is eligible for certification. If there is a laid-off person on the reemployment list with respect to a vacancy, only the top name on such list shall be eligible for certification. In the event the top person is not available for appointment, the next ranking names may be certified until the highest ranking person who is available is appointed. In the event there is no such reemployment list, and the names on the promotional eligible list for such vacancy plus the names on the original appointment eligible list for such vacancy equal three (3) or more, the three (3) names ranked highest on the said promotional eligible list shall be eligible for certification; provided, however, should the said promotional eligible list not contain three (3) names, then the names appearing thereon, plus such of the names ranked highest on the said original appointment eligible list as will be sufficient to bring the number of certified to three (3) shall be eligible for certification. If after making a reasonable effort it should prove impossible for the appointing authority to locate any of the persons so certified or should it become known to the board that any person so certified is not willing to accept the position, the appointing authority may request that additional names be certified until the appointing authority has available to him a list from which to make the appointment containing the aforesaid authorized number of persons all of whom are available for such appointment and willing to accept the position, or, in the event that the list certified to the appointing authority contains fewer than the authorized number of available and willing persons as aforesaid from which to make a selection, the appointing authority, in his discretion, may choose from the remaining certified names, make a temporary appointment, or make no appointment. In the event that there does not exist an employment list which the board deems to be

appropriate from which to fill the vacancy, the board shall prepare such a list within a reasonable time after receipt of the request of the appointing authority that eligibility be certified. Provided, however, nothing herein contained shall be construed as preventing an appointing authority, in his discretion, from withdrawing his request for the aforesaid certification, either before or after such certification has been made in response to his request therefor. Whenever a person has been certified to and rejected by an appointing authority three (3) times, the board may remove the name of such person from the eligible list on which his name appeared. A person shall be deemed to have been so rejected by an appointing authority when a vacancy is filled from an eligible list on which his name appeared and such person was not selected to fill the vacancy.

**Section 14. Probation.** Except as provided in Sections 2 and 3, to acquire permanent status in a position in the classified service so long as such position remains in the classified service, employees shall be subject to a period of probation. The regular period of probation shall be six (6) months; provided, however, the board may adopt rules and regulations specifying a longer period of probation for a designated class or classes, or for extension of the probation period for any individual probationary employee, but no probationary period may extend beyond twelve (12) months. The work and conduct of employees with a probationary status shall be subject to close scrutiny and evaluation. An employee retained beyond the end of the probationary period shall have permanent status in the position in which he was so retained so long as that position remains in the classified service if, but only if, the appointing authority files a written statement with the board affirming the fact that the services of the employee have been found to be satisfactory.

**Section 15. Absences: Hours of Work.** Rules shall be adopted in the manner hereinbefore provided prescribing hours of work and the conditions and length of time for which leaves of absence with pay and leaves of absence without pay may be granted. These shall cover such matters as vacations, holidays, sick leaves, leaves for military service, and leaves granted so that the employee can seek election to public office.

**Section 16. Lay-Off of Employees.** Any employee may be separated from his position by being laid-off. Reduction in the number of employees shall be made in such class or classes as the appointing authority may designate; provided, however, within each class affected by such reduction employees shall be laid off in the following order: (1) temporary employees who did not have permanent status in some other position in the classified service at the time they were appointed to their present position; (2) probationary employees who did not have permanent status in some other position in the classified service at the time they were appointed to their present position; (3) other temporary employees; (4) other pro-

bationary employees; and (5) employees having permanent status in the position in the classified service.

**Section 17. Dismissal, Demotion and Suspension of Employees.** Any employee may be dismissed, suspended without pay or demoted by his appointing authority for, but not limited to, any violation of the provisions of this Act or whenever the good of the service will be served thereby or the employee's work, performance, conduct on or off the job, or insubordinate attitude so warrants; provided, however, that no employee may be suspended without pay for more than fifteen (15) working days at any one time or for more than thirty (30) working days in any one year; and provided further, that no employee shall be dismissed, suspended without pay or demoted for political considerations other than those enumerated in Section 21 hereof. Any person appointed to a position who has secured his certification therefor through fraud shall be removed by his appointing authority and shall not thereafter be eligible for examination for or appointment to any position except by unanimous permission of the board. The appointing authority shall promptly report to the board in writing the fact and extent of all disciplinary action taken by said appointing authority against employees holding positions in the classified service.

**Section 18. Procedure for Protesting Certain Disciplinary Action.** An employee shall have the right to protest any disciplinary action taken against him by his appointing authority; provided, however, an employee serving by temporary appointment and an employee having probationary status shall have no right to protest any such disciplinary action, unless such employee had permanent status in some other position at the time he was appointed to his present position. An employee desiring to protest any disciplinary action directed against him by his appointing authority shall file a protest in writing with the board and with his appointing authority within seven (7) days of the date on which the disciplinary action was taken and request a hearing before the board. Within seven (7) days after receipt of the protest, his appointing authority shall file with the chairman of the board and mail to the employee by certified mail a statement specifying the charges against such employee on which the disciplinary action was based. Upon the filing of such charges, the said chairman shall call a meeting of the board to be held within thirty (30) days after the filing of such charges to hear such protest, and shall forthwith give notice by certified mail to the employee and his appointing authority of the time and place of such meeting. The board shall have the authority to continue the hearing from time to time as may be necessary. In preparing for and conducting such hearing, the chairman and secretary-treasurer of the board shall each have the power to administer oaths, and to subpoena and require the attendance of witnesses and the production of books, documents and accounts pertaining to the subject under investigation.

Subpoenas issued as herein provided shall be served (and the fees and allowances for the service thereof shall be the same) as

is provided by law for the service of subpoena issued by the Circuit Court of Cullman County, Alabama. Said fees and allowances in connection with the service of such subpoena issued at the request of the appointing authority or the board shall constitute reasonable and necessary expenses of the board. Such subpoena issued at the request of the employee shall be served as aforesaid but only after such employee has deposited sufficient security with such sheriff or other officer as will guarantee payment of such fees and allowances for such service. In the event any person is duly summoned to appear and testify or produce evidence, or both, before the board, and such person refuses to attend or testify or produce such evidence, or any of them, in obedience to such summons, the board shall have the right to invoke the aid of the Circuit Court at law. In such event, and upon proper showing by the board to the court, the court shall issue, or cause to be issued, an order or subpoena requiring such person to appear before the board and produce all evidence and give all testimony relating to the issue within his knowledge. Any person failing to obey any such summons by either of said officers of the board without good cause, to be determined by the court, may be punished by the court in the same method as is provided by law for contempt of the court and any person failing to obey and such order or subpoena of the court, may be proceeded against by the court as is by law provided in the case of contempt of such court. In addition, any employee of the city who fails to obey any of such orders or subpoenas may be disciplined as provided in Section 17.

At the hearing the employee and his appointing authority shall each have the right to be represented by counsel. Such hearing shall be governed by rules of practice and procedure adopted by the board, and in conducting such hearing, the board shall not procedure in the conduct of such hearing shall invalidate any decision made by the board. At the conclusion of the hearing, the board shall render a decision (a) affirming the disciplinary action taken if it is reasonably satisfied from the evidence offered at the hearing that the disciplinary action taken was lawful or was be bound by the technical rules of evidence. No informality of not too severe; or (b) reversing the action of the appointing authority if it is reasonably satisfied from such evidence that the disciplinary action taken was not lawful; or (c) modifying the disciplinary action taken and prescribing the proper penalty if it is reasonably satisfied from such evidence that the employee was subject to some disciplinary action, but that the penalty imposed was too severe. If the board's decision reduces the severity of the disciplinary action taken against the employee, the board, in its decision, may provide that the employee shall be reinstated with or without pay; provided, however, in the event any employee is so ordered to be reinstated with pay, such pay shall not exceed the amount that the employee as such earned during the thirty (30) days next preceding the taking of the disciplinary action in question. A copy of the board's decision shall be filed with the city clerk of the city and such decision shall become effective

immediately upon such filing, and it shall become final ten (10) days thereafter unless reversed or modified as hereinafter provided. The Personnel Board shall be represented by the City Attorney, or an attorney designated by the governing body of the city, and said attorney shall perform such duties as the board may direct and require. Any compensation paid said attorney shall be paid as in Section 22 hereof.

**Section 19. Appeal to the Court.** Decisions of the board may be enforced in the court by mandamus, injunction, or other appropriate proceedings. The employee, the appointing authority, or the city may, within ten (10) days after the decision of the board is rendered, appeal to said court from any decisions of the board affirming, imposing or refusing to affirm or impose dismissal or demotion as disciplinary action by filing notice of such appeal with the court and causing a copy of such notice to be served on the appointing authority and any member of the board. Upon the filing of such notice, the board shall file with the court a certified transcript of the proceeding had before it with respect to the appeal, and its decision in the matter. The appeal shall be heard at the earliest possible date by said court sitting without a jury on the issues made before the board and the trial in said court shall be de novo. No bond shall be required for such an appeal and the cost of such appeal shall be taxed against the unsuccessful party or as the judge may direct. At the conclusion of such hearing the court may affirm, reverse, or modify the board's decision, or remand the case for further proceedings before the board as the court in its discretion shall deem best. If the order of the court is that the employee shall be reinstated with pay, such pay shall not exceed the amount that the employee as such earned during the thirty (30) days next preceding the taking of the disciplinary action in question. An appeal may be taken from any judgment of said court to the Court of Appeals or Supreme Court as provided by law.

**Section 20. Records to be Maintained by Board.** The board shall maintain adequate records of its proceedings, of its own official acts, the examintaion record of every candidate, and the employment record of every employee.

**Section 21. Political Activities Prohibited.** No person holding a position in the classified service shall seek or attempt to use any political endorsement in connection with any appointment to a position in the classified service. No person holding a position in the classified service shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person or for any consideration. No employee holding a position in the classified service shall, directly

or indirectly, pay or promise to pay any assessment, subscription, or contribution for any political organization or purpose, or solicit or take any part in soliciting any such assessment, subscription, or contribution. No person shall solicit any such assessment, subscription, or contribution of any employee holding a position in the classified service. No employee holding a position in the classified service shall be a candidate for nomination or election to any public office, or shall take any part in the management or affairs of any political party or in any political campaign, except to exercise his right as a citizen privately to express his opinion and to cast his vote, unless on authorized leave of absence for such purpose. Any person holding a position in the classified service who violates any provision of this section may be disciplined by dismissal, suspension without pay, or demotion as provided in Section 17 of this Act. In addition, any person holding a position in the classified service who wilfully violates any provision of this section shall be guilty of a misdemeanor and upon conviction shall be punished as provided by Section 327 of Title 15 of the Code of Alabama of 1940.

**Section 22. Expenses of Board.** The governing body shall make necessary appropriations from the general fund to pay the reasonable and necessary expenses incurred by the board and its members in the administration of this Act.

**Section 23. Right of Governing Body.** Nothing herein shall be construed as restricting the right of the governing body (1) to refuse employment and prohibit the further service of any person who are members of an organization which is opposed to the basic purpose of local self government; or (2) to increase or decrease proportionately the compensation of all employees; or (3) to use independent contractors for performance of work or the rendering of service by the city.

**Section 24. Severability.** The provisions of this Act are severable. If any part of the Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

**Section 25. Repealer.** All laws or parts of laws which conflict with this Act are repealed.

**Section 26. Effective Date.** This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved October 1, 1971.

Time: 11:25 A.M.