495 So.2d 1367 (1986)
Ex parte Charles A. GRADDICK.
(In re Charles A. GRADDICK v. John BAKER, etc., et al.)
85-1408.
Supreme Court of Alabama.
September 3, 1986.
Champ Lyons, Jr., Mobile, and Hobart A. McWhorter, Jr., and Walter J. Sears III, Birmingham, for petitioner.
David Cromwell Johnson, Edward Still, and Ralph Knowles, Birmingham, and Herman Watson, Jr., and Michael L. Fees, Huntsville, and Joe Espy III, Montgomery, for respondents.
PER CURIAM.
The procedural history of this bitter contest of the 1986 Democratic primary gubernatorial election is succinctly set out in the opinion of the three-judge federal court dated August 26, 1986, as follows:
"PROCEDURAL HISTORY
"Plaintiffs Jerry and Dejerilyn Henderson filed suit on behalf of themselves and all black citizens of Alabama who voted in both the Democratic primary on June 3, 1986 and the Democratic gubernatorial runoff on June 24, 1986. Plaintiffs sought relief under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c on the theory that Charles Graddick, the Attorney General of Alabama and apparent winner of the June 24 runoff, violated the Voting Rights Act by using his office to encourage crossover voting in the June 24 runoff. Crossover voting refers to the practice whereby persons voting in the June 3 Republican *1368 primary voted in the June 24 Democratic runoff.
"Before plaintiffs filed this suit, both Mr. Baxley and Kennith and Nellie Pike filed primary election contests of the June 24 runoff with the State Democratic Executive Committee (`SDEC') pursuant to Ala.Code § 17-16-71. John Baker, chairman of the SDEC, appointed a subcommittee to conduct the contest. Shortly thereafter, Mr. Graddick obtained a temporary restraining order from an Alabama circuit court enjoining the SDEC from holding hearings on the contest and forbidding Mr. Baxley from taking any discovery. The Alabama Supreme Court stayed the temporary restraining order and directed the circuit court to issue promptly a final order. The circuit court then held without any explanation that Mr. Graddick was the lawful winner of the June 24 runoff. The Alabama Supreme Court reversed, holding that Mr. Baxley's challenge was timely filed, that the hearings were timely commenced, that the SDEC was authorized to act through a subcommittee, and that the Democratic party had exclusive jurisdiction to hear the contest. [Ex parte Baxley, 496 So.2d 688 (Ala.1986).]
"Subsequent to the Alabama Supreme Court's decision, after receiving and considering the evidence offered by all parties, this Court concluded that crossover voting constituted a change within the meaning of Section 5 which had not been precleared by either the Attorney General of the United States or the United States District Court for the District of Columbia. Accordingly, this Court entered an order on August 1, 1986 enjoining the Democratic Party from certifying Mr. Graddick as its gubernatorial nominee on the basis of the June 24 runoff. This Court also directed the Democratic Party to conduct another runoff election between Mr. Graddick and Mr. Baxley unless the Democratic Party determined in a primary election contest that Mr. Baxley received the majority of legal votes cast in the June 24 runoff.
"After this Court issued its order, the subcommittee proceeded to hear the contest, and on August 15, 1986, the subcommittee held that Mr. Baxley received the majority of legally cast votes in the June 24 runoff. Mr. Graddick now petitions this court for `emergency relief,' requesting this Court to enjoin the SDEC from certifying Mr. Baxley as its nominee and to order a new runoff between the two. Because the Democratic Party has already certified Mr. Baxley as its gubernatorial nominee to the Alabama Secretary of State, Mr. Graddick further requests this Court to compel the Democratic Party to withdraw its certification of Mr. Baxley in addition to ordering a new runoff."
The three-judge court held that it had no authority to determine whether the primary election contests conducted by the State Democratic Executive Committee complied with state law or are unconstitutional.
Following the federal court order, Graddick filed in this Court, on August 27, 1986, an original petition styled "Petition for Writ of Mandamus, Writ of Prohibition and Other Extraordinary and Equitable Relief," in which he seeks an order from this Court:
(a) requiring the subcommittee of the State Democratic Executive Committee, which heard the contests, to produce and certify the record of the proceedings in the election contests;
(b) declaring that the election contests and the results are reversed and annulled;
(c) ordering the State Democratic Executive Committee to withdraw and vacate its certification of Baxley as nominee of the Alabama Democratic Party for governor; and
(d) requiring the State Democratic Executive Committee to schedule and hold another runoff election between Baxley and Graddick and certify the winner of that election as the nominee of the Alabama Democratic Party.
*1369 On August 28, 1986, Baxley filed a motion to dismiss Graddick's petition. In that motion, he alleges:
"1. Beginning August 11, 1986, the Alabama Democratic Party heard, through a duly appointed subcommittee, the election contest filed by William J. Baxley and Kennith and Nellie Pike. By decision dated August 15, 1986, the subcommittee found that William J. Baxley received the majority of the legally cast votes in the June 14, 1986 run-off election for the Democratic nomination for Governor in Alabama.
"2. Twelve days later, on August 27, 1986, Graddick filed this proceeding in the Alabama Supreme Court seeking to `obtain a determination as to whether the primary election contest conducted by the [subcommittee of the] State Democratic Executive Committee complied with Alabama law.' Graddick seeks this determination through his `petition for writ of mandamus, writ of prohibition, and other extraordinary and equitable relief.'
"3. The petition is due to be dismissed because Graddick failed to pursue his available legal and equitable remedies under the Alabama law. Section 17-16-88, Code of Alabama, explicitly provides that `The state executive committee may prescribe such other additional rules governing contests and other matters of party procedure as it may deem necessary not in conflict with the provisions of this Article.' The Rules of the Democratic Party of Alabama in Article VIII, Section [2]h, page 25 provide as follows:
"`The decision of any contest by a majority of the members of the contest subcommittee shall be final, and no appeal shall lie to the State Committee as a whole unless the decision was not supported by any substantial evidence or was void as a matter of law. Any such appeal must be filed with the State Chairman within ten days after the subcommittee's decision is rendered, and shall state with particularity the facts and circumstances on which the appeal is based.'
"4. Graddick totally failed to comply with the above-cited provision in that he did not appeal (and has not to this date appealed) the decision of the subcommittee to the full State Democratic Executive Committee. [Footnote omitted.] Graddick argues to this Court that the decision of the subcommittee was not supported by `any substantial evidence' and that the result was `void as a matter of law.' Graddick was required to make that argument before the full State Democratic Executive Committee. Had he done so, the SDEC would have considered his arguments. However, Graddick failed to file the required appeal. As a result, Graddick failed to exhaust his remedies and this action is due to be dismissed."
The State Democratic Party and the Pikes also filed motions to dismiss, raising similar grounds.
The arguments advanced by Graddick for relief in this Court are identical to those required by the Rules of the Democratic Party of Alabama to be made to the full State Democratic Executive Committee on appeal from the decision of the contest subcommittee. There is no statutory right of appeal from the subcommittee to this Court. Graddick may not circumvent consideration of the matter by the full committee by coming directly to this Court. He did not timely avail himself of the remedy expressly authorized by the party rules.
The motions to dismiss are granted. Because the motions to dismiss are due to be granted for the reasons discussed hereinafter, we need not discuss the impropriety of filing the petition initially in this Court.
The Constitution of this state, § 190, authorizes the legislature to make provisions by law for the regulation of primary elections. The legislature has done so, and those statutes are now codified at § 17-16-70, et seq., Code 1975. These laws vest the political parties with authority to conduct primary elections and with jurisdiction to decide contests of those elections. There is no statutory right of appeal from the decision *1370 of the party in primary election contests, except § 17-16-87, which permits a party to a contest conducted by any county committee to appeal to the State Executive Committee "which shall be the court of final appeal in all party contests of nominations...."
Section 17-16-88 provides:
"The state executive committee may prescribe such other additional rules governing contests and other matters of party procedure as it may deem necessary not in conflict with the provisions of this article."
Pursuant to this statute, the State Democratic Executive Committee promulgated the rules of the Democratic Party of Alabama. Article VIII, Section 2(h), of those rules (adopted January 31, 1970, amended July 24, 1970, February 2, 1974, and December 3, 1977, and recompiled May 1, 1978) provides:
"The decision of any contest by a majority of the members of the contest subcommittee shall be final, and no appeal shall lie to the State Committee as a whole unless the decision was not supported by any substantial evidence or was void as a matter of law. Any such appeal must be filed with the State Chairman within ten days after the subcommittee's decision is rendered, and shall state with particularity the facts and circumstances on which the appeal is based."
Political parties have legitimate constitutional authority to promulgate rules for the regulation of their affairs and, in Alabama, the legislature has specifically authorized them to do so. Ray v. Blair, 343 U.S. 214, 72 S.Ct. 654, 96 L.Ed. 894 (1952).
Graddick's failure to exhaust the remedy prescribed by Article VIII, Section 2(h), of the Rules of the Alabama Democratic Party, leaves us no alternative; we must grant the motions to dismiss the petition.
The doctrine of exhaustion of remedies is one of long standing in Alabama. It provides that no one is entitled to judicial relief until all other remedies are exhausted. City of Huntsville v. Smartt, 409 So.2d 1353 (Ala.1982); Mobile & Gulf R. Co. v. Crocker, 455 So.2d 829 (Ala.1984).
Among the purposes of the doctrine of exhaustion before court action may be sought is to allow the agency or quasi-judicial body to discover and correct its own errors, if any. Bateman v. Blue Cross-Blue Shield of Alabama, 579 F.Supp. 265 (M.D.Ala.1984). Under this doctrine, courts will decline relief until the remedy provided has been explored and exhausted. Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975).
The time for appeal of the subcommittee's decision in the contests having expired and no appeal having been taken, the decision of the subcommittee must stand, and no court is authorized to extend judicial relief.
The motions to dismiss the petition for writ of mandamus, prohibition, or other extraordinary and equitable relief are granted.
It has been more than two months since the Democratic primary run-off election and only now is it resolved. This period of uncertainty as to the Democratic nominee for governor of this state emphasizes the need for the political leaders of this state to address this entire matter and support and enact legislation which will prevent a repetition of this public confusion in the future.
MOTIONS TO DISMISS GRANTED; PETITION DISMISSED.
JONES, ALMON, SHORES, and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
STEAGALL, J., concurs in the result.
MADDOX and HOUSTON, JJ., dissent.
BEATTY, J., not sitting.
TORBERT, Chief Justice (concurring specially).
The legal issues in this primary election contest should be decided on their merits. *1371 Unfortunately, because of the law, they cannot be in the case before this Court. Therefore, I agree that the present proceedings must be dismissed.
When this Court rendered its August 7, 1986, decision, it was my opinion that we should have addressed the issues which had been raised from the very beginning of this contest, issues which were critical to a speedy, final determination of the Democratic nomination for the office of governor. The majority then declined to write to them. Perhaps the basis was that the contest had not been heard. Now the contest has been heard and the subcommittee has made its decision, but we are foreclosed in the present case.
Alabama statutes governing primary election contests have two principal provisions applicable in this case: (1) Testimony (evidence) cannot be received as to illegal votes unless the complaining party gives notice in writing to the adverse party of the number of illegal votes, by whom given, for whom given, and at what voting place they were cast. Code 1975, § 17-16-79. (2) A declared nomination cannot be amended or set aside unless it is shown to the reasonable satisfaction of the committee that the declared nominee did not receive the number of legal votes necessary to nominate him. Code 1975, § 17-16-72.
A political party has the authority to prescribe rules governing contests and other procedures not in conflict with our statutes. Code 1975, § 17-16-88. The Democratic Party has done just this. Party rules provide for an appeal from the decision of the subcommittee to the full subcommittee within ten days. See Democratic Party Rules, Article VIII, § 2(h). The subcommittee made its decision on August 15, 1986. No appeal was taken by Mr. Graddick within ten days. Instead, on August 27, 1986, he filed in this Court an original proceeding styled "Petition for Writ of Mandamus, Writ of Prohibition and other Extraordinary and Equitable Relief," later amended as to include a petition for a writ of certiorari.
There is no statute or rule allowing or authorizing an appeal from a decision of a party election contest to any court. However, case law has developed that authorizes a circuit court to entertain a petition for a writ of prohibition or a writ of mandamus and thereby to review a political party election contest. Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974). I know of no case, and none has been called to our attention, wherein this Court has reviewed a political party election contest in a direct proceeding. Furthermore, Graddick's contention that our order of July 29, 1986, prevented him from filing this action in circuit court is without merit; our order only prevented the Circuit Court of Jefferson County from "entering any orders or judgments involving the pending Democratic gubernatorial primary election contest...." (Emphasis added.)
In addition to failing to file this action with the proper court, Graddick also failed to exhaust his other remedies. We long ago adopted the doctrine of exhaustion of administrative remedies. Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975). The doctrine was codified in 1981 in Code 1975, § 41-22-20 (part of the Administrative Procedure Act). The purposes behind the doctrine of exhaustion of administrative remedies exist even if the entity charged with resolving disputes is not an administrative agency.[1] Cf. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (an employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and his employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a *1372 suit against his union or his employer under § 301(a) of the Labor Management Relations Act); Eidelson v. Archer, 645 P.2d 171 (Alaska 1982) (suspended physician had to exhaust remedies provided by a private hospital's bylaws before commencing a lawsuit). The overriding purpose of the doctrine is this: If a mechanism exists to resolve a controversy, that mechanism should be given a full opportunity to operate. Specifically, the purposes behind the doctrine are:
"(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that `frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.' Porter v. Schweiker, 692 F.2d 740, 742 (11th Cir.1982) (quoting Patsy v. Florida International University, 634 F.2d 900, 903 (5th Cir.1981), rev'd and remanded on other grounds, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). See also McKart v. United States, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969)."
Bateman v. Blue Cross-Blue Shield of Alabama, 579 F.Supp. 265, 266 (M.D.Ala. 1984).
Graddick contends that the doctrine should not be applied in this case for two reasons: (1) that the SDEC is estopped to claim he must exhaust his remedies and (2) that the law does not require that he perform a futile act.
Neither of these reasons is convincing. Graddick contends that the SDEC waived its right to demand exhaustion of remedies in state court by its failure to raise the issue in the federal court proceeding in Henderson v. Graddick, 641 F.Supp. 1192 (M.D.Ala.1986). However, it is clear that all the parties that opposed Graddick's petition for emergency relief primarily argued that the federal court simply did not have jurisdiction to address the claims that Graddick attempted to raise in that proceeding and which he now raises. The federal court agreed and ruled against Graddick. Because the federal court agreed with the threshold contention of the opposing parties (that the court lacked jurisdiction to entertain Graddick's claims), there is no merit to Graddick's contention that there had been a waiver of defenses that might have been presented after the jurisdictional argument was addressed.[2]
Graddick's second argument is that the doctrine does not apply when it is futile to attempt to exhaust the remedies. However, it is not the mere possibility of an adverse ruling that invokes the exception; see 73A C.J.S. Public Administrative Law and Procedure § 185 (1983). Rather the exception applies only if the claim "clearly will be denied"; Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1556 (11th Cir.1985). The burden of proof is on Graddick to show that his claim clearly would have been denied. His evidence is not sufficient to do that.
In Bateman, supra, the court noted that exceptions to the doctrine should come into play only "when exhaustion will not advance the policies enunciated." Bateman at 267. The futility exception, in particular, should rarely be invoked, if consideration of the policy factors listed in Bateman is important. The thrust of all seven factors is that the administrative procedures should be given a chance to work. *1373 Implicit within policy considerations (5), (6), and (7) is the notion that the agency may make mistakes, but that it should be given an opportunity to correct those mistakes. Graddick failed to allow the committee to correct any mistake that he feels was made and has not shown us that it would have been futile for him to try.
I conclude my comments in this case with a reference to a cause that came before this Court in 1873. In many of its aspects, it is not unlike the present controversy in this election contest for governor. In Ex parte Screws, 49 Ala. 57 (1873), there were two groups, both claiming to be the duly constituted general assembly (legislature) of this state. One group met at the Capitol and was called the "Capitol Legislature"; the other group met at the United States Courthouse and was known as the "Court-house Legislature." Apparently, both bodies purported to enact various statutes. The Courthouse Legislature elected and appointed a state printer, and it was the validity of this election that was disputed. Afterwards, both groups were organized together as the general assembly under a plan submitted by the attorney general of the United States.
Chief Justice Peck, announcing the decision of the Court at the end of a term, recognized the rule of law that each house of a legislature is the sole judge of the qualifications, elections, and returns of its own members and that when either house declares a certain person to be a member of its body, that declaration is final and conclusive and no court can go behind it. Chief Justice Peck also wrote the following:
"The Senate and House of Representatives, each since their organization under the proposal of the Attorney General of the United States, made for that purpose, has declared, that certain persons who had no certificates of election were elected by the people; and certain other persons who had certificates of election were not elected by the people; and the first named persons have been declared and recognized as members of the respective houses. This is conclusive upon us, and we have no power to review or revise what has thus been done. These persons, if elected by the qualified electors, were members of the General Assembly, from the day of their election; and, being members, then, the two bodies, who convened and organized at the court-house in Montgomery, had a majority in both houses; and having such majority, when recognized by the governor, were a constitutional General Assembly, and were competent to do any act, as a General Assembly.... They could elect a public printer, or a senator to the Congress of the United States."
Ex parte Screws, 49 Ala. 57, 63 (1873).
In Screws there was a dissenting opinion by Justice Saffold, which perhaps is more instructive as to the political history of this state than as to legal precedent, but I believe it is worth quoting:
"How easy will it be, when the parties into which the members may be divided are nearly equal, for a sufficient number of seats to be contested, to raise genuine doubts about who are entitled to them? The State is liable to be convulsed on the most frivolous occasions and long afterwards private citizens may be greatly injured, without fault of theirs, by judicial determination of the validity of laws, which they were unable in any way correctly to determine for themselves. Such doubt and difficulty now exist in this State; and to the beneficent interposition of the federal authority alone are we indebted for the privilege of deciding this case before a civil tribunal, rather than having it submitted to the crude arbitrament of intestine strife."
Id. at 68-69.
MADDOX, Justice (dissenting).
This case has had a long and troubled history, and it has been my opinion from the beginning that the State Democratic Committee was probably without jurisdiction to hear the contest filed in connection with the "Second Primary Election" held on June 24, 1986. Now that the SDEC subcommittee has conducted its hearing, has *1374 declared Baxley as the winner of the second primary, and has certified him as the winner with the office of the Secretary of State, I must respectfully dissent.
"A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed.'
Chief Justice Charles Evans Hughes[1]
"Thomas Jefferson thought each judge should write an opinion in every case so as to `throw himself in each case on God and country; both will excuse him for error and value him for honesty.'[2]
Hoping that a later decision may someday possibly correct the errors here made, I set out those errors which I think are most prominent.
In Ex parte Baxley, 496 So.2d 688, this Court, on July 29, 1986, directed the trial court to "forthwith issue its judgment on the merits of the petition of Charles A. Graddick filed with that court on July 24, 1986," and this Court, by that same order, entered the following order: "4. For the purpose of carrying out this order, this Court retains jurisdiction of the petitions to enter further orders which may be necessary to superintend the circuit court in the exercise of its jurisdiction." In its order dated August 7, 1986, this Court entered the following order: "We vacate the judgment of the trial court and direct the SDEC to proceed with a resolution of this matter without further delay." In view of the fact that this Court's order was directed to the SDEC, and not to the trial court, this Court should now review whether the SDEC has followed the law in the hearing ordered by this Court to be conducted.
Because I think that the Court has committed grievous error, and has ignored basic principles of statutory construction of election laws in contest cases, and has totally failed to recognize the constitutional rights of the contestee and the thousands of voters who "legally" cast their ballots for him as the Democratic nominee for Governor, I must respectfully dissent, and hereby set forth the reasons for this dissent, which are summarized as follows:
(1) The SDEC, in proceeding to hear the election contest, has completely failed to follow statutory requirements which govern the proof required to declare a winner of an election, and has certified its declared winner as the nominee of the party.
(2) Exhaustion of administrative remedies is not required when an administrative agency acts outside its jurisdiction. Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919).
(3) The contestant has already been certified, therefore, the contestee, Graddick, will suffer irreparable injury unless this Court, or a circuit court, intervenes to prevent this usurpation of statutory jurisdiction by the SDEC. Cf. Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948).
(4) Judicial intervention is necessary because a delayed resolution of the issue by an exhaustion of administrative remedies conflicts with the public policy of this state and the interest of the voters who "legally" voted for the contestee on June 3 and on June 24 as the democratic nominee. McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).
(5) The presence of the question of the validity of the so-called "crossover" rule, the presence of the constitutional right of the contestee, at least, to be entitled to be a candidate in another election against the contestant, coupled with a sufficient showing in this case, involving an election contest, of the inadequacy of prescribed administrative relief, and the presence of immediate *1375 irreparable injury flowing from delay incident to following any prescribed administrative procedure, are sufficient for judicial intervention, especially since the SDEC is acting outside its statutory jurisdiction.
(6) Every rule of the State Democratic Party, including the "crossover" rule, is probably invalid, because the party failed to follow the requirements of the Alabama Administrative Procedure Act, Code, 1975, § 41-22-1, et seq.
In Ex parte Baxley, I spelled out in some detail the reason why I specially concurred in that opinion to allow the SDEC subcommittee to hear the contest. Now that the SDEC subcommittee has held its contest hearing, and has issued its decision, and now that the three-judge federal court has stated in Henderson v. Graddick, (CV 86-H-680-N, August 1, 1986, (M.D.Ala.)) that it had "no authority to determine whether the primary election contest conducted by the State Democratic Executive Committee complied with Alabama law or is unconstitutional," I am going to take this opportunity to express my individual views, based on what I understand the law to be, regarding this entire matter from its inception. When it was first presented to this Court in Ex parte William J. Baxley (In re Michael Crespi as Chairman of the Republican Executive Committee of Henry County, Alabama, et al. v. The Honorable Jack D. Carl), 494 So.2d 30, and Ex parte Michael Crespi (In re Michael Crespi, etc. v. The Honorable Jack D. Carl, Circuit Judge, etc., et al.), 494 So.2d 30, this Court granted Baxley's petition for writ of mandamus, 494 So.2d 30, and denied Crespi's petition, 494 So.2d 30. I concurred in the result only of that order, and when the application for rehearing was filed by Crespi, I considered filing and stating my reasons for having concurred in the result, and stating some of the problems, jurisdictional and constitutional, which I saw from a legal standpoint in connection with the contested election, but I did not do so, because I was hopeful that either the SDEC or this Court would eventually require the contestant to follow the statutory requirements and would strictly construe those requirements. My hope, of course, was misplaced.
In this opinion, I will set out what I believe the true issues are, and the way I believe those issues should be resolved.
The central issue presented by this petition, and, in fact, the one that has been the central issue all the time, is: Did the SDEC have jurisdiction to hear and determine the contest, because of its failure to strictly comply with the requirements of Code 1975, § 17-16-79? In my opinion, the answer to that question is "no." While I concur that, under the facts of this case, the SDEC could probably call another primary election, it had no statutory jurisdiction to declare the contestant the winner of the second primary, because Alabama law does not allow polling evidence to be used to declare winners of contested political elections.
The motions to dismiss filed by the respondents seek to have this Court give the force and effect of law to the rules it has adopted, raise another question, and that question is: Should the SDEC be allowed to enforce its rules in view of the fact that it has failed to comply with the requirements of the Alabama Administrative Procedures Act, Title 41-22-1, et seq, especially the provisions of Code, 1975, § 41-22-6(b), which require the filing "in the office of the legislative reference service ... a certified copy of each rule adopted by it, including all rules, as defined in this chapter, existing on the effective date of this act...? The answer to that question is also "no."
If a political party, having the power to make rules which have the force and effect of law, fails to comply with the provisions of the Alabama Administrative Procedure Act, there is a serious question as to the validity of its rules. See Code, 1975, § 41-22-4.

I
I will first state why I am of the opinion that this Court, or a trial court, would have jurisdiction to grant the petitioner the relief *1376 he requests in his petition: that "the SDEC be compelled to withdraw and to vacate certification of Baxley as nominee of the Alabama Democratic Party for governor and, in keeping with the order in the Henderson case and § 17-16-87, Code, 1975, schedule and hold another runoff election between Graddick and Baxley, pursuant to the primary election contest law of Alabama, and certify the winner of that election as nominee of the Alabama Democratic Party for office of governor."
In the petition filed before us at this time by Graddick, it is clear that the SDEC completely failed to follow the statutory requirements of Code, 1975, § 17-16-79, which plainly states that "no testimony shall be received of any illegal votes or of the rejection of legal votes in any contest commenced under the provisions of this article unless the party complaining thereof has given to the adverse party notice in writing of the number of illegal votes and by whom given, for whom given, and at what precinct or vote place cast ..." (emphasis added). It is plain from the record that the contestant did not comply with this strict requirement of the law, because he used pollsters to testify for whom the so-called illegal voters cast their ballot.
The SDEC, therefore, was without statutory jurisdiction to hear and determine the contest because of its failure to comply with § 17-16-79, and its declaration of the contestant as the winner of the second primary and certification as the nominee should be set aside and voided. The law is plain: The statutory requirements of the law must be complied with or the tribunal hearing the contest is without jurisdiction to proceed. Perloff v. Edington, 293 Ala. 277, 302 So.2d 92 (1974).
Because petitioner Graddick does not request that this Court require the SDEC to certify him as the winner of the second primary, there is no need to discuss the question whether the evidence presented to the committee was sufficient to authorize it to call a new primary election, as provided for in § 17-16-87.

II
Although I am of the opinion that the SDEC was without jurisdiction to hear and determine the contest, I will state the reason why I am of the opinion that there is a serious legal question whether the SDEC should now be allowed to enforce its rules unless it can show compliance with the Alabama Administrative Procedure Act.[3] In its motion to dismiss the petition, the respondents ask this Court to dismiss the petition on the ground that the petitioner has failed to exhaust his administrative or other remedies, by failing to appeal the decision of the SDEC of Alabama as required by the Rules of the Alabama Democratic Party. Because the respondents request this Court to give to SDEC Rules the force and effect of law, I believe that the requirements of the Alabama Administrative Procedure Act, which governs agencies which possess a portion of the legislative power of this State to make rules, has legal significance, and the party should not be permitted to use rules, as authority for its action, when it has failed to comply with the Alabama Administrative Procedure Act.
After much research, and because of the insistence of the party that its rules have the force and effect of law, I have determined that the SDEC is an "agency" under the provisions of the Alabama Administrative Procedure Act. Code, 1975, § 41-22-3(1) defines an "agency," as follows:
"Agency. Every board, bureau, commission, department, officer, or other administrative office or unit of the state, other than the legislature and its agencies, the water improvement commission, the air pollution control commission, the division of solid and hazardous wastes of the Alabama department of public health and Alabama state docks, the courts or the Alabama public service commission *1377 or the state banking department, whose administrative procedures are governed by sections 5-2A-8 and 5-2A-9. The term shall not include boards of trustees of postsecondary institutions, counties, municipalities, or any agencies of such local governmental units, unless they are expressly made subject to this act by general or special law."
It is quite possible that the legislature, through oversight, merely failed to exclude political parties from the requirements of the Administrative Procedure Act, but the definition of the word "agency" under the Act, in my opinion, is broad enough to include political parties which possess rulemaking power.
It is my opinion that when the legislature adopted the Administrative Procedure Act, it intended to require the publication of all rules and regulations which affected the public at large, and that any "agency" which was delegated a portion of the legislative power to adopt rules and regulations which would have the force and effect of law would be required to follow the mandates of the Act, unless, of course, that agency, which was delegated a portion of the legislative or judicial power of the state was exempt from the requirement of the Alabama Administrative Procedure Act.
The importance of inclusion of rules promulgated by administrative agencies and included by them in a code is obvious. It makes them accessible to the public, so the public can be aware of them, and provides the legislature with oversight of administrative action. This is especially true of rules which might have criminal sanctions attach if they were violated. Violation of the crossover rule, for example, could subject voters to a minimum of two years in prison. See Code, 1975, § 17-23-1.
In § 41-22-2(d), it is stated as follows:
"Every state agency having express statutory authority to promulgate rules and regulations shall be governed by the provisions of this chapter and any additional provisions required by statute, and shall also have the authority to amend or repeal rules and regulations, and to prescribe methods and procedures required in connection therewith. Nothing in this chapter shall be construed as granting to any agency the authority to adopt or promulgate rules and regulations." (Emphasis added.)
The legislature specifically excluded some agencies from the requirements of the Act. In subsection (e), it is apparent that the Alabama State Bar, for example, was exempted under this provision:
"All agencies whose rules or administrative decisions are subject to approval by the supreme court of Alabama and the department of insurance of the state of Alabama are exempted from the provisions of this chapter."
No such provision for political parties who possess the power to make rules is included, and political parties are not exempt from the definition of "agency" in § 41-22-3(1).
One of the purposes of the Alabama Administrative Procedure Act was "to increase public access to governmental information." § 41-22-2(4), and "to increase the fairness of agencies in their conduct of contested case proceedings," § 41-22-2(2), (6), and, "to simplify the process of judicial review of agency action, as well as increase its ease and availability." § 41-22-2(2), (7)
The power granted to the SDEC pursuant to the provisions of § 17-16-14 to adopt rules governing who could be entitled to vote in a primary is meant to apply to the definition of a "rule" as defined in § 41-22-3(9), which provides as follows:
"Each agency regulation, standard or statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule...." (Emphasis added.)
I reach my conclusion when I look at § 41-22-25, which deals with the construction *1378 and applicability of the Alabama Administrative Procedure Act and § 41-22-26, which repeals and replaces "all provisions in statutes of this state relating to rule making, agency orders, administrative adjudication, or judicial review thereof that are inconsistent with the provisions of this chapter." If the word "agency" is to be broadly construed, and if § 17-16-44, which provides for rule making power in the State Democratic Executive Committee, is repealed insofar as it is inconsistent with the provisions of the Alabama Administrative Procedure Act, then it is apparent to me that the SDEC is, in fact, an "agency" and that any rule adopted by the SDEC would have to be published as required under the provisions of the Alabama Administrative Procedure Act. Of course, the Act would apply to all political parties having power to make rules which have the force and effect of law and come within the definition of the word "rule" in the Act. In fact, in § 41-22-2(d), the legislature has provided that "every state agency having express statutory authority to promulgate rules and regulations shall be governed by the provisions of this chapter * * *." (Emphasis added.) The commentary to this section points out that § 41-22-25 provides that the Act "shall be construed broadly to effectuate its purposes," which are enumerated in this section (§ 41-22-2). The commentary further states: "Thus, it is the intent of this act that the specific purposes enumerated in this section shall be applied to the actions of all agencies not specifically exempted from the provisions of this act, and to the courts, in interpreting any ambiguity in the language of this act for the purpose of giving effect to the requirements of its sections." (Emphasis added.)
With regard to the definition of the word "rule" and whether or not the rules promulgated by the SDEC come within the purview of the Alabama Administrative Procedure Act, it is interesting to note that in the commentary to § 41-22-3, it is provided as follows:
"The importance in having a careful and precise definition of `rule' is to distinguish the regulatory activity that resembles legislation, applicable to all persons or a relatively large segment of the population outside the context of any specific controversy, from administrative activity that has a more judicial character and which, therefore, ought to be subject to judicial review."
What should the SDEC have done to comply with the Act? Section 41-22-6(b) provides that "the secretary of each agency shall file in the office of the legislative reference service no later than 15 days after the filing with the secretary of the agency, in a form and manner prescribed by the legislative reference service, a certified copy of each rule adopted by it, including all rules, as defined in this chapter, existing on the effective date of this act." (Emphasis added.)
The commentary to § 41-22-6 states that the purpose of the section is to insure that the public has a reasonable opportunity to be informed of all agency rules, both those existing at the time of the passage of the act and those later promulgated, and to have permanent access to all the rules.
Under the provisions of § 41-22-7, the Legislative Reference Service is required to establish and maintain an official register of regulations which "shall be so compiled, indexed, published in looseleaf form and kept up to date by the Legislative Reference Service," and the register of regulations shall be known as the "Alabama Administrative Code." The Legislative Reference Service is also required to publish a monthly bulletin entitled the "Alabama Administrative Monthly," which shall contain a statement of "either the terms or substance of all rules filed during the preceding month, excluding rules in effect on October 1, 1982, together with other materials required by law and such other material the agency or committee determines to be of general interest."
The penalty for failure to comply with the provisions of the law is set forth in § 41-22-4, which provides, in subsection (b) that "no agency rule, order, or decision *1379 shall be valid or effective against any person or party nor may it be invoked by the agency for any purpose until it has been made available for public inspection and indexed as required by this section and the agency has given all notices required by section 41-22-5." (Emphasis added.) There is an escape clause in § 41-22-5, which reads: "This provision is not applicable in favor of any person who has actual knowledge thereof, and the burden of proving such knowledge shall be on the agency." (Emphasis added.)
Further support for my view that the SDEC is an "agency" of the state is contained in Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), where the Court, in the so-called "white primary" case, held:
"We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the State insofar as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party.... (Emphasis added.)
"* * *
The privilege of membership in a party may be, as this Court said in Grovey v. Townsend, 295 U.S. 45, 55, [55 S.Ct. 622, 626, 79 L.Ed. 1292] no concern of a State. But when, as here, that privilege is also the essential qualification for voting in a primary to select nominees for a general election, the State makes the action of the party the action of the State."

III
Even assuming that respondents can now assert that Graddick failed to appeal the decision of the subcommittee within the time required by the rules of the Alabama Democratic Party, this petition on behalf of Graddick should never be considered as a substitute for an appeal. In the first place, Graddick claims that the judgment of the subcommittee was void, as a matter of law. I agree, as I have already shown.
The record in the various petitions and appeals filed in this Court contain substantial evidence that Graddick asserted the invalidity of the crossover rule in his initial pleading before the subcommittee; he asserted his claim that the crossover rule was invalid in the federal action; he argued here that the Circuit Court of Jefferson County correctly held that the subcommittee lacked statutory jurisdiction to consider the contest on several grounds. This Court refused to grant him judicial review of those claims, but retained jurisdiction, and "directed" the SDEC to proceed with its hearing. To now hold that Graddick has waived his right to assert the jurisdictional claim by failing to appeal to the full SDEC, when he claimed he was entitled to that in several prior judicial proceedings, I believe, violates every known principle of exhaustion of administrative remedies.
In Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32 (1940), cited by this Court in support of its decision to vacate the order of the circuit court and to direct the SDEC to proceed with a resolution of the matter without further delay in Ex parte Baxley, 496 So.2d 688, supra, this Court stated:
"Clearly enough, and it does not seem to be questioned, that if the Executive Committee has jurisdiction of this contest, the circuit court has no jurisdiction to interfere with its exercise of that jurisdiction. * * * Prohibition is the proper remedy to intercept and put an end to usurpation of jurisdiction." (Emphasis added.)
Graddick's claim in that appeal, and in his petition here, is that the SDEC was without statutory jurisdiction, because its proceedings were being conducted contrary to statutory requirements.
In Ex parte Baxley, 496 So.2d 688, a majority of this Court held:
"The legislature intended to make it difficult to win primary election contests, but not impossible, and it certainly gave the parties to the contest a right to be heard." (Emphasis added.)
*1380 The parties to the contest have now been given their right to be heard, and the SDEC has clearly failed to follow the requirements of § 17-16-79, in conducting that hearing; therefore, I am of the opinion the SDEC was without jurisdiction to declare Baxley the winner of the second primary election, and this Court, or a circuit court, has the power to "intercept" the proceeding, and prohibition is the appropriate remedy.

IV
The final reason why I would direct the SDEC to hold another primary election between Graddick and Baxley is that the law authorized it, and it would be the just way to allow the voters of Alabama to decide, in an election unaffected by any alleged illegality, who should be the democratic nominee.
Graddick's petition contains the findings of fact of the three-judge federal court, and the two opinions of that court in Henderson. His petition also contains the findings made by the SDEC subcommittee which heard the election contest, in which the SDEC made the following finding:
"There emerged just before the June 3 primary and intensified between June 3 and June 24 an organized effort to encourage Republicans who voted in the Republican Primary on June 3 to invade the Democratic Primary runoff on June 24 for the specific purpose of voting for Graddick.
"Democratic Party officials commenced prior to June 3, and intensified after that date efforts to counter this `crossover' vote by numerous activities designed to educate the public as to the Alabama law and Democratic Party rules.
"The findings of the three judge panel detail the evidence presented in Federal Court relating to malconduct and specify the violations of applicable laws of the United States of America."
It would have been desirable, in view of the "justiciable controversy" which obviously was surfacing over the so-called "crossover rule," had the SDEC or Baxley sought a declaratory judgment, as authorized by the Alabama Administrative Procedure Act, § 41-22-10, or under the Declaratory Judgment Act itself, within sufficient time, at least, before the holding of the second primary, to insure that its rule was valid and enforceable.
Similarly, it would have been desirable had Graddick, as a candidate, sought a judicial determination of the validity of the crossover rule in sufficient time before the second primary was held, so that election officials and voters would have been apprised of their legal rights.
Of course, that was not done,[4] but had it been done, election officials, the voters, and the people of Alabama would have probably been spared the controversy which has now developed, and which has consumed so much of the public's concern. As an associate justice of this Court, however, I must accept the facts and apply the law as I see it to the best of my ability, based upon what is before me, guaranteeing to the contestant and contestee what I consider would be equal justice under the law. At this juncture, I believe that, under the Constitution and laws of the State of Alabama and the Constitution of the United States, the SDEC, as a "state agency," under the doctrine of Smith v. Allwright, failed to follow the requirements of § 17-16-79, and can only order a new election between the contestant and the contestee.
The reliance of the majority upon law applicable to administrative agencies strengthens my belief that the SDEC is an "agency" under the Alabama Administrative Procedure Act and is governed by its requirements.
*1381 In closing, I will state again, as I did in my special concurrence in Ex parte Baxley, 496 So.2d 688, that I do not concede that the two contests were timely filed, and that the SDEC complied with other requirements of law, but those questions are not presented here now. Graddick asks only for the right to be a candidate in another primary election. I believe the laws and Constitutions give him that right. I would grant him that relief. Consequently, I must respectfully dissent.
HOUSTON, Justice (dissenting).
I would deny the motions and consider the case on its merits.
This Court on July 18, 1986, in its opinion in Ex parte Baxley (In re Crespi v. Carl), 494 So.2d 30 (Ala.1986), held that the State Democratic Executive Committee (SDEC) was an administrative agency of the State of Alabama and derived its judicial power from legislative grant pursuant to Amendment 328, Section 6.01(b) of the Constitution of Alabama, 1901 ("The legislature ... may vest in administrative agencies established by law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes to which the agencies are created"). I concurred only in the result in the opinion issued by this Court on July 18, 1986, because I did not consider the SDEC an administrative agency of the State of Alabama. However, the SDEC is such an agency, because the majority of this Court so held in Ex parte Baxley, supra, which holding is supported by the United States Supreme Court case of Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). Since the SDEC is such an agency, I am persuaded that the SDEC is governed by the Alabama Administrative Procedure Act (§§ 41-22-2 through 41-22-27, Code 1975, as amended). The Rules of the Democratic Party adopted by the State Democratic Executive Committee of Alabama on January 31, 1970 (amended July 24, 1970, February 2, 1974, and December 3, 1977; recompiled May 1, 1978; and amended April 21, 1979) (hereafter "Rules"), became invalid and of no effect on October 1, 1983, since they were not readopted pursuant to the Alabama Administrative Procedure Act. § 41-22-27, Code 1975. The Rules have not been published in the "Alabama Administrative Code" as provided for by § 41-22-7(e), Code 1975. Therefore, the Rules of the SDEC became invalid and of no effect on October 1, 1983. The motion to dismiss filed by John Baker, et. al., and the motion to dismiss filed by Lieutenant Governor William J. Baxley are predicated upon the petitioner's not having complied with Article VIII, Section 2(h), page 25, of the Rules of the Alabama Democratic Partyan invalid rule. There is no requirement to comply with an invalid rule; therefore, I would deny the motions to dismiss and consider the case on its merits.
NOTES
[1] We need not decide whether the State Democratic Executive Committee (SDEC) is an agency subject to the provisions of the Administrative Procedure Act, because such a decision is unnecessary to a resolution of this controversy and, more importantly, because the issue has not been raised by any party. With due deference to my Brothers Maddox and Houston, I believe it is inappropriate to reach out and decide an issue that was not presented.
[2] Exhaustion of administrative remedies is not a jurisdictional doctrine. Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550 (11th Cir.1985).
[1] Musmanno, `Dissenting Opinions', 6 Kan.Law. Rev. 407, 410; William O. Douglas, "The Dissent: A Safeguard of Democracy', 32 J.Am.Jud.Soc'y 104, 106.
[2] 32 J.Am.Jud.Soc'y at page 106.
[3] Early in the proceedings in this Court, I attempted unsuccessfully to find a copy of the Rules in the Alabama Administrative Code.
[4] Immediately prior to the second primary election, actions were filed in the circuit courts of Jackson and Mobile counties to obtain rulings on the validity of the "crossover rule," but neither of those conflicting judgments was appealed, and those conflicting judgments merely added to the confusion.